**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Tamara Hawkins<br>457 Denwood Ct.,<br>Gahanna, Ohio 43230<br><br>    Plaintiff,<br><br>v.<br><br>Carrington Mortgage Services, LLC,<br>c/o CT Corporation System,<br>4400 Easton Commons Way, Suite 125,<br>Columbus, Ohio 43219<br><br>    Defendant. | CASE NUMBER:<br><br>JUDGE:<br><br>**<u>JURY DEMAND ENDORSED<br>HEREIN</u>** |

**COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**

The following allegations are based upon Plaintiff Tamara Hawkins' ("Plaintiff") personal knowledge, the investigation of counsel, and information and belief. Plaintiff, through counsel, alleges as follows:

**INTRODUCTION**

1. In 2016, Plaintiff's parents, Harry and Linda Lowe (the "Lowes") entered into a VA mortgage loan with Polaris Home Funding Corp. to finance the purchase of real estate located at 457 Denwood Ct., Gahanna, Ohio 43230 (the "Property") (the "Mortgage Loan"). A true and accurate copy of the Mortgage Loan is attached hereto as Exhibit A.

2. The Lowes purchased the Property to be used as their primary residence.

3. On or about April of 2017, Linda Lowe sadly passed away.

4. On or about October of 2016, Plaintiff moved into the Property to help care for

1

her parents.

5. On or about August 16, 2020, Harry Lowe sadly passed away, and left the Property to Plaintiff. A true and accurate copy of the transfer documents are attached hereto as Exhibit B.

6. Thereafter, Plaintiff became the successor in interest to the Property.

7. In or about September of 2021, Plaintiff began experiencing financial difficulties.

8. On or about September 14, 2021, Rushmore placed Plaintiff's Mortgage Loan on a CARES Act Forbearance Plan ("Forbearance Plan").

9. The initial Forbearance Plan was to last for a period of 15 months from August 1, 2021, until November 1, 2022.

10. On or about November 2, 2021, Plaintiff sent a loss mitigation application to Rushmore regarding the death of her father, that she was a successor in interest, and that she was experiencing financial difficulties due to her father's death and Covid-19.

11. On or about November 2, 2021, Rushmore acknowledged receipt of Plaintiff's loss mitigation application.

12. On or about December 7, 2021, Rushmore extended the Forbearance Plan's terms from 15 months to 21 months until April 1, 2022. A true and accurate copy of the Forbearance Plan Terms Letter is attached hereto as Exhibit C.

13. On or about February 2, 2022, Rushmore transferred servicing of the Mortgage Loan to Carrington Mortgage Services, LLC ("Defendant").

14. Upon the transfer of the Mortgage Loan, Defendant immediately sent Plaintiff a

notice of default, while she was still on a Forbearance Plan.

15. Worse, since Defendant has taken over the servicing of Plaintiff's Mortgage Loan, Defendant has engaged in a pattern or practice of disorganized incompetence, flagrant disregard for Federal Law, and is maliciously attempting to manufacture a default by Plaintiff.

16. Defendant has added excess charges and fees to the Mortgage Loan while it was in forbearance, repeatedly made misrepresentations to Plaintiff, repeatedly failed to review Plaintiff for loss mitigation options in connection with the CARES Act, RESPA, and Regulation X, and failed to allow Plaintiff to end her forbearance.

17. Plaintiff has brought this lawsuit to correct those improper charges and enjoin Defendant from filing a foreclosure before it has satisfied all conditions precedent under Federal Law.

**PRELIMINARY STATEMENT**

18. Plaintiff institutes this action for actual damages, statutory damages, punitive damages, declaratory and injunctive relief, attorney fees, and the costs of this action against Defendant for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 (1974) ("RESPA"), violations of Regulation X, 12 C.F.R. §§ 1024.1-1024.41 (2011) ("Reg X"), violations of the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. §§ 9001-9141 (2020) (CARES Act), and declaratory and injunctive relief.

**JURISDICTION**

19. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337.

20. This Court has subject matter jurisdiction over Count Two pursuant to 28 U.S.C § 1367, as those claims form part of the same case or controversy as Count One.

21. This Court has personal jurisdiction over Defendant because Defendant transacts business within this District, the Mortgage Loan was incurred within this District, and the property which was the subject of the Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

**VENUE**

22. The majority of the witnesses reside in the Southern District of Ohio.

23. A substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Ohio.

24. All of the property that is the subject of the action is situated in Southern District of Ohio.

25. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2).

**PARTIES**

26. Each action or inaction alleged herein against Defendant is also an allegation of action or inaction by Defendant's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

27. Plaintiff is a natural person currently residing within this Court's jurisdiction at 457 Denwood Ct., Gahanna, Ohio 43230.

28. At all times relevant to this transaction, Plaintiff was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

29. At all times relevant to this transaction, Plaintiff was and is a **"Borrower"** within the meaning of RESPA as a confirmed successor in interest.

30. At all times relevant to this transaction, Plaintiff was and is a **"Borrower"**

4

within the meaning of Reg X, 12 C.F.R. § 1024.30(d).

31. Defendant is a mortgage lender and servicer headquartered in California.

32. At all times relevant to this transaction, Defendant was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

33. At all times relevant to this transaction, Defendant was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. § 2605(i)(2).

34. At all times relevant to this transaction, Defendant engaged in and engages in **"Servicing"** of Plaintiff's Mortgage Loan within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

**FACTUAL ALLEGATIONS**

35. Plaintiff incorporates all paragraphs by reference as though fully written here.

36. Under the terms of Plaintiff's Forbearance Plan and subsequent extensions, her Mortgage Loan payments were paused until April 1, 2022, and no late fees were to be assessed to her Mortgage Loan during that period.

37. As of December 7, 2021, Rushmore noted that Plaintiff owed $4,894.49 in past due payments on the Mortgage Loan.

38. On or about February 2, 2022, when the Mortgage Loan was transferred to Defendant, Plaintiff's Mortgage Loan was still on the Forbearance Plan.

39. On or about February 14, 2022, Plaintiff called Defendant and informed it that she was the successor in interest to the Property.

40. On or about February 15, 2022, Defendant sent Plaintiff a notice listing her as a "potential successor in interest" for the Mortgage Loan.

41. On or about February 15, 2022, Defendant demanded that Plaintiff send in multiple documents to be confirmed as a successor in interest to the Mortgage

Loan.

42. On or about February 15, 2022, Defendant sent Plaintiff a Mortgage Statement with a Delinquency Notice stating that $7,915.80 was past due on the Mortgage Loan.

43. Then instead of honoring the Forbearance Plan that Rushmore put into place, on or about February 16, 2022, Defendant sent Plaintiff's deceased father a notice of default.

44. The notice of default stated that Plaintiff owed $127,027.99 on the Mortgage Loan, which included improperly applied interest and penalties.

45. On or about February 23, 2022, Plaintiff sent in the successor in interest documents that Defendant demanded.

46. On or about February 25, 2022, Defendant sent Plaintiff's deceased father a notice stating that he had contacted Defendant on February 24, 2022, and that Defendant had approved Plaintiff's Mortgage Loan for a COVID-19 forbearance plan ("COVID-19 Forbearance Letter). A true and accurate copy of the COVID-19 Forbearance Letter is attached hereto as Exhibit D.

47. The COVID-19 Forbearance Letter listed the term of the forbearance as 21 months beginning August 1, 2020, and that no fees or penalties would be assessed to the Mortgage Loan account during those 21 months.

48. On or about March 3, 2022, Defendant confirmed Plaintiff as a successor in interest.

49. On or about March 9, 2022, Plaintiff informed Defendant that she could resume making monthly mortgage payments.

6

50. On or about March 9, 2022, Defendant demanded that Plaintiff submit additional documents to be considered for loss mitigation options.

51. On or about March 23, 2022, Plaintiff submitted all of the additional documents Defendant requested to Defendant.

52. On or about April 1, 2022, Defendant sent Plaintiff's deceased father a notice confirming that it received the additional documents but stated that Plaintiff's loss mitigation application was still incomplete ("4/1 Loss Mit Notice").

53. The 4/1 Loss Mit Notice did not list which documents Plaintiff still needed to submit for her loss mitigation application to be considered complete.

54. On or about April 4, 2022, Defendant sent Plaintiff's deceased father another notice requesting additional documents including pay stubs.

55. On or about April 5, 2022, Plaintiff informed Defendant that she was on SSDI and a kinship program for having custody of her grandchildren and did not receive pay stubs.

56. On or about April 7, 2022, Defendant sent Plaintiff's deceased father another notice requesting additional documents by April 22, 2022.

57. On or about April 12, 2022, Defendant sent Plaintiff's deceased father a notice confirming that it received the additional documents but stated that Plaintiff's loss mitigation application was still incomplete ("4/12 Loss Mit Notice").

58. The 4/12 Loss Mit Notice did not list which documents Plaintiff still needed to submit in order for her loss mitigation application to be considered complete.

59. On or about April 13, 2022, Defendant sent Plaintiff's deceased father a notice that Covid-19 forbearance plan would end on April 30, 2022.

60. On or about April 18, 2022, Plaintiff submitted the requested documents to Defendant to complete her loss mitigation application.

61. On April 26, 2022, Defendant sent Plaintiff's deceased father a letter stating that he had notified Defendant on 02/24/2022 that he had been impacted by Covid-19, and that Defendant was extending the Covid-19 forbearance period until May 31, 2022.

62. On or about May 11, 2022, Defendant sent Plaintiff's deceased father a notice that her loss mitigation application was complete. A true and accurate copy of that notice is attached hereto as Exhibit E.

63. From May 11, 2022, until the present, Defendant has not sent Plaintiff any additional written notices or documents regarding whether her loss mitigation application is complete, the results of Defendant's review of her loss mitigation application, or a notice of what documents would be required to complete her loss mitigation application.

64. On or about June 1, 2022, Defendant sent Plaintiff's deceased father a letter stating that he had notified Defendant on 02/24/2022 that he had been impacted by Covid-19, and that Defendant was extending the Covid-19 forbearance period until June 30, 2022.

65. On or about June 3, 2022, Defendant called Plaintiff stating that they needed additional documents to complete her loss mitigation application.

66. On or about June 3, 2022, Plaintiff sent Defendant the documents they requested.

67. On or about June 13, 2022, Plaintiff again called Defendant to ask about the

8

status of her loss mitigation application.

68. On or about June 13, 2022, Defendant represented to Plaintiff that her loss mitigation application was still incomplete, and that Defendant needed additional documents to complete it including a quit claim deed signed by Plaintiff's sister.

69. On or about June 13, 2022, Plaintiff informed Defendant that she could not obtain a quit claim deed from her sister.

70. On or about June 13, 2022, Defendant demanded that Plaintiff provide a written statement that she could not obtain a quit claim deed.

71. On or about June 15, 2022, Plaintiff again sent in the documents that Defendant requested.

72. On or about June 20, 2022, Plaintiff again called Defendant to inquire about the status of her loss mitigation application.

73. On or about June 20, 2022, Defendant represented to Plaintiff that her loss mitigation application was still incomplete, and that Defendant needed additional documents to complete it, including a quit claim deed signed by Plaintiff's sister.

74. On or about June 20, 2022, Plaintiff again informed Defendant that she could not obtain a quit claim deed from her sister.

75. On or about June 20, 2022, Defendant demanded that Plaintiff provide a written statement that she could not obtain a quit claim deed.

76. On or about June 28, 2022, Plaintiff again sent in the documents that Defendant requested.

9

77. On or about July 11, 2022, Plaintiff again called Defendant to inquire about the status of her loss mitigation application.

78. On or about July 11, 2022, Defendant represented to Plaintiff that her loss mitigation application was still incomplete, and that Defendant needed additional documents to complete it, including a quit claim deed signed by Plaintiff's sister.

79. On or about July 11, 2022, Plaintiff again informed Defendant that she could not obtain a quit claim deed from her sister.

80. On or about July 11, 2022, Defendant demanded that Plaintiff provide a written statement that she could not obtain a quit claim deed.

81. From February of 2022 until the present, Plaintiff has called Defendant every week to inquire about the status of her loss mitigation applications, and documents that Defendant still allegedly needed to complete her loss mitigation applications.

82. From February 2022 until the present, Defendant has repeatedly told Plaintiff conflicting information regarding her loss mitigation applications.

83. From February 2022 until the present, Defendant has repeatedly lied to Plaintiff regarding the status of her loss mitigation application.

84. From February 2022, until the present Defendant has engaged in a pattern or practice of requesting documents it does not need to attempt to prevent Plaintiff from completing a loss mitigation application.

85. Defendant's malicious conduct has needlessly inflated the amounts owed on Plaintiff's Mortgage Loan, added additional interest, and applied improper

10

penalties all in an attempt to manufacture a default by Plaintiff.

86. Defendant's lack of diligence resulted in increased arrearages for both the Mortgage Loan and any loss mitigation options Plaintiff could receive, resulting in lost equity.

87. As a result of Defendant's actions, primarily its lack of diligence and misrepresentations, Plaintiff suffers from severe emotional distress, including anxiety, increased stress, and sleepless nights.

88. As a result of Defendant's actions, Plaintiff incurred excess arrearages for escrow, late payments, and interest charges on the loan caused by Defendant's lack of diligence and misrepresentations.

**COUNT ONE – RESPA AND REG. X VIOLATIONS AGAINST DEFENDANT**

89. Plaintiff incorporates all paragraphs by reference as though fully written here.

90. Defendant's actions described herein constitute violations of RESPA, (1974), Reg. X, 12 C.F.R. §§ 1024.1-1024.41 (2011), and the CARES Act 15 U.S.C. §§ 9001-9141 (2020).

91. Violations of Reg. X and the CARES Act constitute violations of RESPA pursuant to 12 U.S.C. § 2605(k)(1) and 2617(a).

92. Defendant failed to allow Plaintiff to cancel the forbearance at Plaintiff's request in violation of 15 U.S.C. § 9056(b)(2) and 9056(c)(1).

93. Defendant assessed fees and penalties to Plaintiff's Mortgage Loan account beyond fees, penalties, and interest scheduled and calculated prior to the forbearance in violation of 15 U.S.C. § 9056(b)(3).

94. Defendant demanded additional documentation for Plaintiff to exit the

forbearance in violation of 15 U.S.C. § 9056(e)(1).

95. By failing to exercise reasonable diligence related to Plaintiff's loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. §1024.41(b).

96. By failing to exercise reasonable diligence in obtaining documents, requiring payments, and obtaining information to allegedly complete Plaintiff's loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(b)(1).

97. By failing to timely review loss mitigation options available to Plaintiff related to her loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(b)(2).

98. Defendant failed to provide Plaintiff with the correct notices regarding the receipt of documents, the receipt of the loss mitigation application itself, and the identification of which additional documents Plaintiff needed to submit to complete the loss mitigation application in violation of 12 C.F.R. § 1024.41(b)(2)(i)(B).

99. Defendant failed to provide Plaintiff with notice of a reasonable date by which Plaintiff was required to submit additional documents to complete the loss mitigation application in violation of 12 C.F.R. § 1024.41(b)(2)(ii).

100. By failing to timely review loss mitigation options available to Plaintiff related to her loss mitigation applications, requests, and subsequent submissions, Defendant violated Reg. X, 12 C.F.R. § 1024.41(c)(1).

101. Defendant required Plaintiff to make up payments and pay other charges as part

of offering a COVID-19 related loss mitigation option in violation of Regulation X, 12 C.F.R. §1024.41(c)(2)(v).

102. Defendant did not end any preexisting delinquency by Plaintiff upon her acceptance of a COVID-19 related forbearance in violation of Reg. X, 12 C.F.R. § 1024.41(c)(2)(v).

103. Defendant failed to offer Plaintiff a loan modification in violation of Reg. X, 12 C.F.R. § 1024.41(c)(2)(vi).

104. Defendant violated Reg. X, 12 C.F.R. § 1024.41(c)(4)(i) when it failed to exercise reasonable diligence in obtaining information not in Plaintiff's control, including the quit claim deed.

105. Defendant violated Reg. X, 12 C.F.R. § 1024.41(c)(4)(ii) when it failed to send Plaintiff the proper notice required under that Section.

106. Defendant violated Reg. X, 12 C.F.R. § 1024.41 (k)(1) by not complying with Reg. X after Plaintiff had submitted or completed a loss mitigation application with Rushmore.

107. Defendant violated Reg. X, 12 C.F.R. § 1024.41 (k)(2) by not sending the appropriate notices required under that Section.

108. Defendant violated Reg. X, 12 C.F.R. § 1024.41 (k)(2) by not sending the appropriate notices required under that Section.

109. Defendant violated Reg. X, 12 C.F.R. § 1024.41 (k)(3) by failing to comply with Reg. X, 12 C.F.R. § 1024.41(c)(1) – (4) after Plaintiff submitted or completed her loss mitigation application with Rushmore.

110. Defendant regularly fails to evaluate and process loss mitigation applications of

its borrowers in compliance with RESPA and Regulation X, including request for loss mitigation options related to the COVID-19 pandemic.

111. Defendant engaged in a pattern or practice of noncompliance with the requirements of RESPA.

112. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, stress, and sleepless nights.

113. As a result of Defendant's actions, Plaintiff was prevented from cancelling her forbearance, paid payments she did not have to pay, and suffers from an improper loan balance due to Defendant's failure to exercise diligence and comply with RESPA.

114. Defendant is liable to Plaintiff under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00, actual damages for its violations of RESPA, and the costs of this action and attorney fees pursuant to 12 U.S.C. § 2605(f).

## COUNT TWO – INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT AGAINST DEFENDANT

115. Plaintiff incorporates all paragraphs by reference as though fully written here.

116. A real and justiciable controversy exists between Plaintiff and Defendant concerning whether Defendant properly reviewed Plaintiff's loss mitigation application, and whether Defendant has satisfied the requirements under 12 C.F.R. § 1024.41(f).

117. As described above, Defendant failed to properly evaluate Plaintiff for loss mitigation options.

118. As Defendant has failed to properly evaluate Plaintiff for loss mitigation options

and has failed to offer Plaintiff a Loan Modification Plan, it is prohibited from making the first notice or filing required by applicable law to commence a foreclosure proceeding.

119. Plaintiff's damages alone under Count One are an inadequate remedy.

120. Plaintiff has suffered and will continue to suffer substantial injury, including a potential foreclosure on her home, as a result of Defendant's violations of federal law.

121. Absent injunctive relief by this Court, Defendant is likely to continue to injure Plaintiff by requesting additional amounts due or by accelerating the Mortgage Loan and filing a foreclosure, reap unjust enrichment, and harm public interest.

122. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P 57, Plaintiff is entitled to judgment declaring that Defendant must comply with the conditions precedent under RESPA and Reg. X prior to making the first notice or filing required by applicable law to commence a foreclosure proceeding.

123. Plaintiff is entitled to an injunction prohibiting Defendant from adding excess arrears to Plaintiff's Mortgage Loan Account, and from filing a foreclosure against Plaintiff until it has satisfied the requirements mandated by federal law, including but not limited to those proscribed in RESPA, Reg X., the CARES Act, and the U.S. Department of Housing and Urban Development's, the U.S. Department of Veteran's Affairs, and the Consumer Financial Protection Bureau's policies, regulations, and guidelines.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction of this case;

B. Grant Plaintiff the maximum damages she seeks on her counts, including the maximum statutory damages available under each claim where statutory damages are available, and the maximum economic and non-economic damages available, including actual, emotional, general, and other damages;

C. Award Plaintiff actual damages to be established at trial;

D. Award Plaintiff statutory damages under RESPA;

E. Award Plaintiff the costs of this litigation;

F. Award Plaintiff her attorney fees;

G. Declare that Defendant's acts and practices violate RESPA;

H. Enjoin Defendant from adding excess arrears to Plaintiff's Mortgage Loan Account, and from filing a foreclosure against Plaintiff until it has satisfied its promises to Plaintiff and the requirements mandated by federal law, including but not limited to those proscribed in RESPA, Reg X., the CARES Act, and the U.S. Department of Housing and Urban Development's, the U.S. Department of Veteran's Affairs, and the Consumer Financial Protection Bureau's policies, regulations, and guidelines; and

I. Award such other relief as the Court deems appropriate.

Dated: July 20, 2022

                                              Respectfully Submitted,
                                              Kohl & Cook Law Firm, LLC

                                              /s/Timothy J. Cook
                                              Brian A. Brown (0096733)
                                              Timothy J. Cook (0093538)
                                              Sean M. Kohl (0086726)
                                              1900 Bethel Rd.
                                              Columbus, OH 43220
                                              PH (614) 763-5111
                                              FAX (937) 813-6057
                                              Timothy@KohlCook.com
                                              Brian@KohlCook.com
                                              *Attorneys for Plaintiff*

## **JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all triable issues.

                                              /s/ *Timothy J. Cook*
                                              Timothy J. Cook (0093538)